UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TERRANCE E. MACKEY,

                    Petitioner,

v.                                          Case No. 3:08-cv-326-J-34JBT

SECRETARY OF THE FLORIDA
DEPARTMENT OF CORRECTIONS,[1]
et al.,

                    Respondents.
_____

**ORDER**

**I. Status**

    Petitioner Mackey, who is proceeding pro se, initiated this
action by filing a Petition for Writ of Habeas Corpus (Petition)
(Doc. #1) under 28 U.S.C. § 2254 on March 27, 2008, pursuant to the
mailbox rule.  Mackey challenges a 2006 state court (Columbia
County, Florida) judgment of conviction for sale or delivery of
cocaine within 1,000 feet of a church and possession of cocaine
with the intent to sell or deliver within 1,000 feet of a church on
the following grounds: counsel provided ineffective assistance
because he failed to: (1) impeach the testimony of Officer Kevin

_____

    [1] The Secretary of the Florida Department of Corrections,
having custody of Petitioner, is the proper Respondent.

Griffin (Mackey's probation officer) with Griffin's inconsistent statements and object to the State's closing argument referring to Griffin's veracity; (2) investigate and develop an entrapment defense at the violation of community control (VOP) hearing when substantial evidence to support the defense was allegedly available; and (3) disclose to Mackey, during the initial criminal proceedings, the results of a favorable laboratory report, which found no identifiable fingerprints on the plastic bag which contained cocaine.[2]

Respondents have submitted a memorandum in opposition to the Petition. See Respondents' Answer in Response to Order to Show Cause (Response) (Doc. #10).[3]  On May 12, 2008, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. #5), admonishing Petitioner regarding his obligations and giving Petitioner a time frame in which to submit a reply.  Petitioner submitted a brief in reply on December 17, 2008.  See Petitioner's Response to Respondents' Answer (Reply) (Doc. #13). This case is ripe for review.

---

[2] James Melvin Stewart, Sr., represented Mackey during the initial criminal proceedings, and Walter Leonard Flinn represented Mackey at the VOP stage of the proceedings.

[3] The Court will refer to Respondents' exhibits as "Resp. Ex."

2

## II. State Court Procedural History

On June 20, 2005, Mackey was charged in Columbia County, Florida, with sale or delivery of cocaine within 1,000 feet of a church (count one) and possession of cocaine with the intent to sell or deliver within 1,000 feet of a church (count two).  Resp. Ex. A at 1-2, Information.  Petitioner entered a negotiated plea of guilty to the charges in exchange for a sentence of fifteen years of imprisonment, suspended to fifteen years of probation with the first two years on drug offender community control supervision. Id. at 42-44.  On November 21, 2005, the court adjudged Mackey guilty in accordance with the plea agreement and suspended the sentence.  Id. at 49-59.

On April 26, 2006, Petitioner's probation officer filed an affidavit of violation of community control, alleging that Mackey had failed to remain confined to his approved residence in accordance with the order of community control.  Id. at 62.  After a June 26, 2006 VOP hearing, see Resp. Ex. F at 28, Transcript of the VOP hearing (Tr.),[4] the court found that Petitioner had willfully and substantially violated the terms of his community control and imposed the fifteen year sentence that had been previously suspended.  Id. at 37, 40.  The written judgment, sentence, and order revoking community control were consistent with

---

[4] This Court will cite to the page numbers in the upper right-hand corner.

the oral pronouncement. Resp. Ex. A at 87-91, 98.    On appeal, Petitioner, through counsel, filed a brief, in which he argued that Petitioner did not willfully and substantially violate his community control. Resp. Ex. B. The State filed an Answer Brief. Resp. Ex. C. On February 15, 2007, the appellate court affirmed Mackey's conviction and sentence per curiam. <u>Mackey v. State</u>, 949 So.2d 203 (Fla. 1st DCA 2007); Resp. Ex. D. The mandate issued on March 5, 2007.[5] Resp. Ex. E.

On May 19, 2007, Petitioner filed a <u>pro</u> <u>se</u> motion for post conviction relief (3.850 motion) pursuant to Fla. R. Crim. P. 3.850, raising claims of ineffectiveness based upon counsel's failing to: (1) impeach the testimony of Officer Griffin with his inconsistent statements and object to the State's closing argument; (2) investigate and develop an entrapment defense at the VOP hearing when substantial evidence to support the defense was allegedly available; and (3) disclose to Mackey favorable laboratory results. Resp. Ex. F at 1-20. The trial court denied the 3.850 motion on August 23, 2007. <u>Id</u>. at 21-27.

Petitioner appealed the denial of his 3.850 motion and filed a brief. Resp. Ex. G. However, the State filed a notice that it would not file a brief. Resp. Ex. H. On February 15, 2008, the appellate court affirmed the denial per curiam. See <u>Mackey v.</u>

---

[5] Online docket, <u>Terrance E. Mackey vs. State of Florida</u>, Case No. 1D06-3433, website for the First District Court of Appeal (http://www.1dca.org).

State, 974 So.2d 1072 (Fla. 1st DCA 2008); Resp. Ex. I.   The
mandate issued on March 12, 2008.[6]  Resp. Ex. J.

### III. One-Year Limitations Period

The Petition is timely filed within the one-year period of
limitations.   See 28 U.S.C. § 2244(d); Response at 4.

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a
federal court must consider whether such a hearing could enable an
applicant to prove the petition's factual allegations, which, if
true, would entitle the applicant to federal habeas relief."
Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted).
"It follows that if the record refutes the applicant's factual
allegations or otherwise precludes habeas relief, a district court
is not required to hold an evidentiary hearing."   Id.   The
pertinent facts of this case are fully developed in the record
before the Court.   Because this Court can "adequately assess
[Petitioner's] claim[s] without further factual development,"
Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert.
denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be
conducted.

---

[6] Online docket, Case No. 1D07-4593, http://www.1dca.org.

5

## V.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (AEDPA), the review "is 'greatly circumscribed and highly deferential to the state courts.' Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)." Stewart v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007).

> [Section] 2254(d) allows federal habeas relief for a claim adjudicated on the merits in state court only if the state court adjudication[7] resulted in a decision that was: "(1) . . . contrary to, or involved an unreasonable[8] application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Marquard, 429 F.3d at 1303.[9]  The phrase "clearly established Federal law," as used in § 2254(d)(1), encompasses only the holdings, as opposed to the dicta, of the United States Supreme Court as of the time of the relevant state court decision.  See Carey v. Musladin,

---

[7] For a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling.  Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003).

[8] "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro, 550 U.S. at 473 (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

[9] Marquard v. Sec'y, Dep't of Corr., 429 F.3d 1278 (11th Cir. 2005), cert. denied, 547 U.S. 1181 (2006).

> 549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d
> 482 (2006) (citing <u>Williams v. Taylor</u>, 529
> U.S. 362, 412, 120 S.Ct. 1495, 1523, 146
> L.Ed.2d 389 (2000)); <u>Osborne v. Terry</u>, 466
> F.3d 1298, 1305 (11th Cir. 2006).

<u>Id</u>. at 1208-09.

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' §2254(e)(1)." <u>Schriro</u>, 550 U.S. at 473-74.  This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981)).

## VI. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel.  That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted).  The Eleventh Circuit has captured the essence of an ineffectiveness claim:

> The clearly established federal law for
> ineffective assistance of counsel claims was
> set forth by the U.S. Supreme Court in
> <u>Strickland v. Washington</u>, 466 U.S. 668, 104
> S.Ct. 2052, 80 L.Ed.2d 674 (1984).  To
> establish a claim of ineffective assistance of
> counsel, first, "the defendant must show that
> counsel's performance was deficient . . .

> [which] requires showing that counsel made
> errors so serious that counsel was not
> functioning as the 'counsel' guaranteed the
> defendant by the Sixth Amendment." Id. at
> 687, 104 S.Ct. at 2064.  Second, the defendant
> must show that counsel's deficient performance
> prejudiced him.  Id.  That is, "[t]he
> defendant must show that there is a reasonable
> probability that, but for counsel's
> unprofessional errors, the result of the
> proceeding would have been different.  A
> reasonable probability is a probability
> sufficient to undermine confidence in the
> outcome."[10] Id. at 694, 104 S.Ct. at 2068.

Gaskin v. Sec'y, Dep't of Corr., 494 F.3d 997, 1002 (11th Cir. 2007) (per curiam).  Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010) (citation omitted), cert. denied, 131 S.Ct. 647 (2010).

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> The question "is not whether a federal
> court believes the state court's
> determination" under the Strickland standard

---

[10] In Hill v. Lockhart, 474 U.S. 52, 58-59 (1985), the Court held that the two-part Strickland test applies to challenges to guilty pleas based on ineffective assistance of counsel.  In the context of guilty pleas, the "prejudice" requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  Thus, to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

"was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro, supra, at 473, 127 S.Ct. 1933. And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009); see also Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision.").

## VII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Petitioner claims that counsel (Walter Flinn) was ineffective, at the VOP hearing, because Flinn failed to impeach Officer Griffin's testimony with his inconsistent statements and also failed to object to the State's closing argument referring to Griffin's veracity. As acknowledged by the parties, Petitioner raised this claim in his 3.850 motion. After identifying the two-prong Strickland ineffectiveness test as the controlling law, the trial court denied the 3.850 motion with respect to this claim, stating in pertinent part:

9

Defendant was initially charged by in-formation, on or about June 20, 2005, with one count of sale or delivery of cocaine within 1000 feet of a church and one count of possession of cocaine with the intent to sell or deliver within 1000 feet of a church. Mr. Melvin Stewart represented the Defendant during the criminal proceedings and sentencing. Pursuant to a plea agreement with the State, the Defendant pled guilty to both counts and was sentenced on November 21, 2005, to fifteen years in the Department of Corrections, with said sentence being suspended to fifteen years of probation, with the first two years designated as drug offender community control. On April 26, 2006, Kevin Griffin, a Correctional Probation Senior Officer, submitted an affidavit of violation of community control, alleging that the Defendant had violated Condition 13B of the Order of Community Control by being away from his approved residence on April 23, 2006 at 4:00 pm without the prior permission of his community control officer. Defendant denied the violation and a subsequent violation of probation hearing was held on June 26, 2006. At the VOP hearing, the Defendant was represented by Mr. Walter Flinn. Following the testimony of Officer Griffin, the Defendant, and Maxine Jackson (the Defendant's mother), the court found that the Defendant was in willful violation of the conditions of his community control and reinstated the fifteen year suspended sentence. Defendant timely appealed the judgment and sentence, which the First District Court of Appeal affirmed on March 5, 2007.

. . . .

With regard to Ground One, the Defendant alleges that Mr. Flinn rendered ineffective assistance by failing to impeach Officer Griffin with his inconsistent statements regarding the times in which the Defendant was away from his approved residence. Specifically, the Defendant alleges that Officer Griffin changed his testimony that he

first arrived to check on the Defendant from
3:00 pm to 4:00 pm. Further, the Defendant
asserts that the change in times proves
Officer Griffin's intention to give false
testimony.

Upon review of all testimony provided at
the violation of community control hearing,
this Court finds that Mr. Flinn's alleged
failure to impeach Officer Griffin with his
alleged misstatement had no prejudicial effect
on the outcome of the hearing. During direct
questioning, Officer Griffin testified that he
arrived at the Defendant's residence at 3:00
pm, knocked on the Defendant's door and the
Defendant did not answer. Officer Griffin then
testified that he returned at 4:00 pm, at
which point he observed the Defendant walking
across the motel parking lot carrying a plate
of food. (See attached Violation of Community
Control Transcript, Page 11-12). Subsequently,
on re-direct examination, Officer Griffin
corrected his misstatement, without prompting
by counsel, by testifying that he initially
arrived at 4:00 pm and then came back at 5:15
pm. (See attached Violation of Community
Control Transcript, Page 19-20). This
corrected testimony was consistent with the
affidavit of violation of community control
and arrest affidavit filed months earlier by
the officer.[11]

Further, it appears that both sides were
operating under the premise that the alleged
violation was concerned with the Defendant's
whereabouts at 4:00 pm. Defendant testified
that he was in his room at 4:00 pm and that he
had just taken a shower. Further, he testified
that his step-father dropped off a plate of
food between 4:15 and 4:20 and then, he went
across the parking lot to an acquaintance's
room to use his microwave to heat up the food.
Upon cross-examination, Defendant testified
that he dropped off the food to be heated up,

---

[11] See Resp. Ex. A at 62, Affidavit of Violation of Community
Control.

but did not actually enter the other person's
room, and when he came back to pick it up,
some forty-five minutes to an hour later, is
when he ran into Officer Griffin. The
testimony that the Defendant was seen crossing
the parking lot with a plate of food is
consistent with Officer Griffin's testimony
and sworn affidavit.

With regards to the inconsistency in
Officer Griffin's testimony, this Court fails
to see how the Defendant was prejudiced by Mr.
Flinn's alleged failure to impeach, where the
inconsistency was addressed by the witness and
brought to the attention of the court.
Defendant has not established that there is a
reasonable probability that the result of the
violation of community control hearing would
have been different had Mr. Flinn attempted to
impeach Officer Griffin with what appears on
the face of the record to be a mere slip of
the tongue. Therefore, Ground One is denied.

Resp. Ex. F at 21, 23-24. On Petitioner's appeal, the appellate

court affirmed the denial per curiam.

This ineffectiveness claim was rejected on the merits by the

state trial and appellate courts. As there are qualifying state

court decisions, this claim will be addressed applying the

deferential standard for federal court review of state court

adjudications required by AEDPA. After a thorough review of the

record and the applicable law, the Court concludes that the state

courts' adjudications of this claim were not contrary to clearly

established federal law and did not involve an unreasonable

application of clearly established federal law. Nor were they

based on an unreasonable determination of the facts in light of the

evidence presented in the state court proceedings. Therefore, Petitioner is not entitled to relief on the basis of this claim.

Even assuming that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is without merit. In evaluating the performance prong of the Strickland ineffectiveness inquiry, the Court recognizes that there is a strong presumption in favor of competence. The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citations omitted). Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. United States v. Freixas, 332 F.3d 1314, 1319-20 (11th Cir. 2003). Petitioner has failed to establish that counsel's failure to impeach Griffin's testimony and object to the State's closing argument was deficient performance.[12]

---

[12] Although Mackey, in the Rule 3.850, argued that counsel was ineffective for failure to object to the State's closing argument, see Resp. Ex. F at 3, the trial court did not specifically address that argument in denying ground one. See id. at 23-24. Nevertheless, this Court concludes that counsel's performance was not deficient for failure to object to the State's very brief closing argument, see id. at 61-62. The record reflects that Mackey, during his testimony, addressed Griffin's accusations as to Mackey's whereabouts during the pertinent times that day and also

Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice.  Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged he should have provided. Accordingly, Petitioner's ineffectiveness claim is without merit since he has neither shown deficient performance nor resulting prejudice.  See Response at 7-8.

## B. Ground Two

As ground two, Petitioner claims that counsel (Walter Flinn) was ineffective, at the VOP hearing, because Flinn failed to investigate and develop an entrapment defense when substantial evidence to support the defense was allegedly available. Specifically, Mackey asserts that Officer Griffin "did manage to manipulate petitioner into violating probation by making up the rules for supervision as he went along, and setting a different set of conditions than those previously given [when Mackey resided with his mother]."  Petition at Ground Two (a).  Petitioner raised this claim in his 3.850 motion.  Ultimately, the trial court identified the Strickland ineffectiveness test as the controlling law and

---

challenged Griffin's veracity.  See id. at 50-56.  Further, after the State's closing argument, the trial court permitted Mackey to again address Griffin's accusations against him.  See id. at 63-64.

denied the 3.850 motion with respect to this issue, stating in pertinent part:

> With regards to Ground Two, the Defendant alleges that Mr. Flinn was ineffective for failing to investigate and develop an entrapment defense. Defendant relies on statements made by Officer Griffin during the violation of community control hearing which allegedly demonstrate Officer Griffin's dislike for the Defendant and his willingness to spontaneously make up the rules of supervision in order to violate the Defendant. Defendant specifically relies on Officer Griffin's answer to Mr. Flinn's question regarding Officer Griffin's instruction on the boundaries of Defendant's confinement at the Hillcrest Motel in which Officer Griffin responded "[w]ell, I can't state those instructions other than he's required to remain confined to his approved residence." (See attached Violation of Community Control Hearing Transcript, Page 18).

> In the instant case, the Defendant has failed to establish the viability of an entrapment defense; therefore he has failed to prove that Mr. Flinn's performance was deficient for failure to raise the defense. The defense of entrapment as codified in Section 777.201, Florida Statutes, essentially focuses on whether an agent for the government induced the accused to commit the offense charged. See Munuz v. State, 629 So.2d 90 (Fla. 1993). The general rule, subject to limited exceptions not applicable to the instant case, is that a defendant who denies committing the crime cannot claim entrapment as a defense. See Wilson v. State, 577 So.2d 1300 (Fla. 1991). The instant violation of community control arose from the Defendant being away from his approved residence at 4:00 pm. The Defendant testified that such claim is false and that he was at his approved residence at 4:00 pm. Here, the Defendant cannot simultaneously allege that he was at his approved residence at 4:00 pm while at the

15

> same time he was lured away by Officer
> Griffin's lack of clear instructions. The
> evidence presented by the Defendant as to why
> he was away from his approved residence
> sometime after 4:00 pm is irrelevant as to
> whether he was at his approved residence at
> 4:00 pm. Because Defendant has not presented
> facts to establish the viability of an
> entrapment defense to the instant violation of
> community control, he has failed to prove that
> Mr. Flinn's decision not to pursue the use of
> an entrapment defense was outside the range of
> reasonable professional assistance.
> Accordingly, Ground Two is denied.

Resp. Ex. F at 24-25.   The appellate court affirmed the trial court's denial per curiam.

This ineffectiveness claim was rejected on the merits by the state trial and appellate courts.  Thus, as there are qualifying state court decisions, this claim will be addressed applying the deferential standard for federal court review of state court adjudications.  Following a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to relief on the basis of this ineffectiveness claim.

Additionally, even assuming that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is without merit.  The facts, here, did

16

not support an entrapment defense for the violation of community control.[13]   See Black v. State, 41 So.3d 423, 425 (Fla. 1st DCA 2010) (stating counsel was not ineffective for failing to pursue an entrapment defense when the defendant did not allege that the confidential police informant induced him into a drug sale he otherwise would not have participated in).

Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice.  Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged he should have provided. Accordingly, Petitioner's ineffectiveness claim is without merit since he has neither shown deficient performance nor resulting prejudice.

## C. Ground Three

Petitioner claims that, during the initial criminal proceedings, James Melvin Stewart, Sr., was ineffective because he failed to disclose the laboratory report, which found no identifiable fingerprints on the plastic bag containing cocaine.

---

[13] Entrapment is defined as "employing methods of persuasion or inducement which create a substantial risk that such crime will be committed by a person other than one who is ready to commit it." Fla. Stat. § 777.201(1).  "Inducement" includes "persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or friendship." Farley v. State, 848 So.2d 393, 395 (Fla. 4th DCA 2003) (quotations omitted).

Petitioner raised this claim in his 3.850 motion. After identifying the two-prong Strickland ineffectiveness test as the controlling law, the trial court denied the 3.850 motion with respect to this issue, stating in pertinent part:

> With regards to Ground Three, the Defendant argues that his original guilty plea should be vacated due to the ineffective assistance of Mr. Melvin Stewart, who represented the Defendant during the initial criminal proceedings. Defendant alleges that Mr. Stewart failed to communicate the favorable results of a FDLE la[b] report which found no identifiable fingerprints on the plastic bag which contained cocaine.[14] It is evident from the court records that the FDLE lab report was turned over to the defense during discovery.[15]  Defendant's allegation is the results were not communicated to him by Mr. Stewart and that if they had been he would have rejected the State's plea offer and would have insisted on proceeding to trial.
>
> In cases involving a request to withdraw a plea based upon alleged ineffective assistance of counsel, the prejudice prong of Strickland is satisfied by proof "that there is a reasonable probability that, but for counsel's errors [the defendant] would not have pleaded guilty and would have insisted on going to trial." Cordes v. State, 842 So.2d 874, 875 (Fla. 2nd DCA 2003)(quoting Hill v. Lockhart, 474 U.S. 52, 58 (1985)).  To determine whether a reasonable probability exists that the defendant would have insisted

_____

[14] See Resp. Ex. A at 36, FDLE No. 20050101941, laboratory report, stating: "No latent prints of value for identification purposes were noted, detected or developed on the submitted exhibit."

[15] See Resp. Ex. A at 35, Third Supplemental Answer of the State to Defendant's Demand for Discovery, dated September 28, 2005.

on going to trial, a court should consider the totality of the circumstances, including but not limited to such factors as whether a particular defense was likely to succeed at trial, the disparity between the terms of the proposed plea bargain and the probable consequences of proceeding to trial, and the plea colloquy between the defendant and the trial court. <u>See</u> <u>Grosvernor [sic] v. State</u>, 874 So.2d 1176 (Fla. 2004).[16]

In the instant case, the Defendant alleges that he would have insisted on going to trial had Mr. Stewart communicated the results of the FDLE lab report; however, in light of the totality of the circumstances, the Defendant has failed to establish a reasonable probability that he would have in fact insisted on proceeding to trial. First, the FDLE lab report, while favorable to the defense, was not particularly damaging to the State's case. The record shows the Defendant participated in a controlled sting operation conducted by the multi-jurisdictional drug task force, whereby a confidential informant was sent to purchase illegal narcotics from the Defendant.[17] The transaction was recorded by secret monitoring devices, although clarity of the recordings has been previously attacked by the Defendant. Further, when the Defendant was arrested, police officers found in his vehicle a brown paper bag containing cocaine residue. Thus, in summary, there was ample evidence to convict the Defendant had the case proceeded to trial.

With regards to the <u>Grosvenor</u> factor of the disparity between the plea bargain actually accepted and the potential outcome faced as a result of proceeding to trial, this Court finds that there was an enormous disparity between the two outcomes that casts

---

[16] <u>Grosvenor v. State</u>, 874 So.2d 1176 (Fla. 2004), <u>cert</u>. <u>denied</u>, 543 U.S. 1000 (2004).

[17] <u>See</u> Resp. Ex. A at 18.

serious doubt on the Defendant's instant claim. In the instant case, the Defendant was charged with two first degree felonies, each of which carried a maximum sentence of thirty years in the Department of Corrections, for a total maximum sentence of 60 years prison. Moreover, pursuant to the Criminal punishment Code score sheet filed at the time the Defendant's plea bargain was entered, the Defendant scored a minimum permissible sentence of 65.925 months and faced a total maximum of sixty years in the Department of Corrections. (See attached Criminal Punishment Code Scoresheet, November 21, 2005).[18] In contrast to the potential lengthy prison sentence faced as a result of losing at trial, the Defendant accepted a plea bargain which allowed him to avoid prison by agreeing to a fifteen-year suspended sentence to be served on probation. At the time of sentencing on November 21, 2005, the Defendant "walked out" of the courtroom, albeit on probation for fifteen years, rather than "being transported" to the Department of Corrections for sixty years. The disparity is, obviously, great.

Finally, the instant assertion that the Defendant would have insisted on going to trial had he known the favorable results of the FDLE lab report is in direct contrast with his actions in actively seeking a plea agreement from the State. Here, Defendant even went so far as to personally write the assistant state attorney assigned to his case with the Defendant's own plea offer. See attached letter dated August 30, 2005.[19] Based on this and the other circumstances mentioned above, this Court finds that the Defendant has not established a reasonable probability that he would have refused a plea agreement and insisted on going to trial but

---

[18] <u>See</u> Resp. Ex. A at 46.

[19] <u>See</u> Resp. Ex. A at 34, Mackey's letter to the prosecutor, dated August 30, 2005.

> for counsel's alleged errors. Therefore,
> Ground Three is denied.

Resp. Ex. F at 25-26.  On Petitioner's appeal, the appellate court affirmed the denial per curiam.

As this ineffectiveness claim was rejected on the merits by the state trial and appellate courts, it will be addressed applying the deferential standard for federal court review of state court adjudications required by AEDPA.  After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law.  Nor were they based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Therefore, Petitioner is not entitled to relief on the basis of this claim.

Even assuming that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is without merit.  Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice.  Petitioner has not shown that there is a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial.  The favorable terms of the plea agreement providing for a suspended sentence rather than a term of incarceration, see Resp. Ex. A at 42-44, and Mackey's letter soliciting a plea offer of probation and a suspended sentence from

the prosecutor, id. at 34, suggest that Mackey would not have insisted on proceeding to trial even if he had known about the favorable laboratory results, see id. at 36 (showing that "[n]o latent prints of value for identification purposes were noted, detected or developed on the submitted exhibit").  As the post conviction court concluded, the laboratory report "was not particularly damaging to the State's case" and "there was ample evidence to convict the Defendant" if he had proceeded to a trial. See Resp. Ex. F at 25, 26.  Accordingly, Petitioner's ineffectiveness claim is without merit since he has failed to show any resulting prejudice.

### VIII. Conclusion

Upon consideration of the foregoing, the undersigned finds that "[u]nder the doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard, see Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam), [Petitioner's] ineffective-assistance claim[s] fail[]." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009).  Accordingly, for the above-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

### IX. Certificate of Appealability
### Pursuant to 28 U.S.C. § 2253(c)(1)

If Petitioner seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted.  This Court should issue a

certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 12th day of January, 2011.

**MARCIA MORALES HOWARD**
United States District Judge

sc 1/11
c:
Terrance E. Mackey
Ass't Attorney General (Winokur)

24